## The Attorney General v. The New-Jersey Railroad and Transportation Company and others.

A court of equity has jurisdiction to a certain extent in cases of public nuisance, although it has been rarely exercised.

The common law courts have an undisputed jurisdiction over public nuisances by indictment, and a court of equity ought not to interfere in a case of misdemeanor, when the object sought can be as well attained in the ordinary tribunals.

The injunction is a preventive remedy ; if the injury be already done the writ can have no operation, for it cannot be applied correctively so as to remove it.* It is not used for the purpose of punishment, or to compel persons to do right, but simply to prevent them from doing wrong.

THIS was an information filed by the attorney general of the state of New-Jersey, in behalf of the state, at the relation of Luke Davis, John Caldwell, Robert Baldwin, John Williams, Abraham Cadmus and James R. Mills, for and on behalf of themselves, and the rest of the owners of property in the town of Newark and on the banks of the Passaic river, to compel the defendants to abate a public nuisance created by them by the erection of the railroad bridge across the river Passaic, at Newark. The material charges contained in the information are stated in the opinion of the chancellor.

The prayer of the information is, that an injunction issue restraining the defendants from doing any further work in, upon, or about the said railroad bridge, and that the said work be stopped until the further order of the court, "and that the defendants be decreed to obviate and abate the said nuisance, and that the

---

* The general principle is as stated by the chancellor. But the rule admits of exceptions, and as applied to the abatement or removal of nuisances, either public or private, it seems not to be universally true that the remedy by injunction cannot be applied : *Attorney General* v. *Richards*, 2 *Anst.* 603 ; *The East India Co.* v. *Vincent*, 2 *Atkyns*, 83 ; *Robinson* v. *Lord Byron*, 1 *Bro. C. C.* 588 ; *Anon.* 1 *Vesey*, 140 ; *Lane* v. *Newdigate*, 10 *Vesey*, 193 ; *Attorney Gen.* v. *Parmenter*, 10 *Price*, 378 ; *Van Bergen* v. *Van Bergen*, 2 *John. Chan. R.* 272 ; *Van Bergen* v. *Van Bergen*, 3 *John. Chan. R.* 282 ; *Hammond* v. *Fuller*, 1 *Paige*, 197 ; *Bell* v. *Blount*, 4 *Hawk.* 384.

said Passaic river be restored to that condition that its usefulness be no longer impaired."

The cause was heard upon a motion for the allowance of an injunction, upon notice to the defendants and service of a copy of the information. Affidavits ex parte were taken by the parties and read upon the hearing.

*Gifford* and *Wall*, for the relators.

*Williamson*, for the defendants.

Cases cited for the relators. 3 *Kent's Com.* 432; 5 *Pick.* 492; 10 *Mod.* 382; 1 *Hals.* 1; 1 *Newl. Chan. Prac.* 217; 1 *Vesey,* 543; 1 *Fonb. Eq.* 267; 3 *Paige,* 567; 1 *Newl. Prac.* 219; 1 *Fonb. Eq.* 258; *Will. Eq. Pl.* 276; 1 *Mad.* 129; 18 *Vesey,* 211, 217; 1 *Vesey,* 188.

Cases cited for the defendants. 18 *Vesey,* 215; 1 *Mad.* 128; 10 *Mass.* 75.

THE CHANCELLOR. The title of this suit shows that it involves matters of public concern. The attorney general has presented a bill or information in the name of the state of New-Jersey, against the defendants, and charges them with being in the act of erecting a bridge over the Passaic river, which is a navigable stream, in such way as to interfere materially with the navigation; and calls upon this court, on the ground that such bridge will be, or is, a serious detriment to the community and a public nuisance, to interfere and prevent the further erection of the same, and also to order the same to be obviated and abated.

The information is of great length, and I will advert to only a few prominent parts of it. It sets out the act incorporating the New-Jersey Railroad and Transportation company; by which it appears that the company are to cross the Passaic and Hackensack rivers with their road, *contiguous to or south of* the bridges over those streams; and by which act it is directed, that

the said corporation may construct their railroad " across or upon any road or highway, stream of water or water-course, if the same be necessary ; but the said corporation shall restore such road, highway or stream of water or water-course, to such state or condition as not to impair its usefulness : Provided always, that in case the said company shall deem it expedient to cross any navigable river with the said railroad, they shall be at liberty to erect and build a bridge for that purpose over the said river, with a draw therein of at least thirty feet width."

It charges, that the company first located their road through Broad street, so as to cross the Passaic near the old bridge ; that they abandoned that route and located a new one, crossing the river a mile below the old bridge ; that this being strongly opposed, they abandoned it, and resolved to place their bridge across the river at the north end of Moses Dodd's dock, with a draw in it of forty-five feet. That in July they commenced driving piles, when it was discovered that the part of the bridge intended for the draw measured only thirty-five feet, and was near the western abutment of the bridge. That a number of the owners of property above, applied to the directors on the subject, and gave notice that measures would be taken to prevent the draw from being constructed of such size. Public meetings were called, and finally a committee was appointed with instructions to pursue legal measures to prevent or remedy the evil.

The information then charges, that by the erection of the said bridge great mischief will ensue to the public ; that it will be an irreparable injury, and is now an apparent public nuisance ; that the erection of the bridge and draw in the manner in which they are now being constructed is contrary to express agreement, and that as early an application as practicable has been made for an injunction.

Some affidavits have been taken and read by both parties. Those of the relators go to sustain some of the principal allegations of the bill. Those of the defendants deny the fact charged, that the railroad was ever actually located through Broad street down to the old bridge, or on any other route than the one it now

takes. They state, that the piles are all driven, the superstructure raised, floors laid, rails laid for one track, and bridge fit for the passage of cars on the same; that there is a continuous track from the draw on the east side to Jersey City, and from the draw on the west side to Broad street in the town of Newark; that the construction of the slide was commenced about the middle of July last, it is now nearly ready for use, and no injury can result from the slide provided the same is removed from the opening. The impediment, if any, arises from the *size of the opening, not from the slide.* One witness states that the slide is completed with the exception of some fixtures, which may and probably will be appended to it in the course of another day. These affidavits also controvert the fact charged, that the draw is injurious to the navigation of the river.

This information is to prevent or abate a public nuisance, and the application now made is to prevent the alleged nuisance.

It would seem at first, incongruous and improper for this court to interfere in cases of public nuisance. The very fact that nuisances of that character are offences against the community, and necessarily savor of criminality in a greater or less degree, would seem to distinguish them as matters not proper to be dealt with by this court. But the jurisdiction of chancery, to a certain extent, in cases of public nuisance, appears to be admitted, although it has rarely been exercised. It is asserted by lord Hardwicke, in *Baines* v. *Baker, Amb.* 159; 3 *Atk.* 750; and is considered as existing by lord Eldon, in the case of the *Attorney General* v. *Cleaver,* 18 *Vesey,* 211. He speaks with caution upon the subject, as though it were new, but not disputed ground. Chancellor Kent, in *Attorney General* v. *the Utica Insurance Company,* 2 *John. Chan. R.* 371, appears rather to question the jurisdiction;* considering that the cases of purpresture which have

---

* "In regard to public nuisances, the jurisdiction of courts of equity seems to be of very ancient date; and has been distinctly traced back to the reign of queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purprestures upon public rights. In cases of public nuisances, properly so called, an indictment lies to abate them and

often occurred in the court of exchequer on the equity side, differ in some important particulars from a strict case of public nuisance. He seems to think that the case of *Baines* v. *Baker*, before lord Hardwicke, has been misunderstood. It was a bill filed by one individual against another, to stay building a hospital for people infected with the small pox, very near the houses of several tenants of the plaintiff. The court said, if it was a nuisance at all it was a public nuisance; that bills of that sort were founded on nuisances at common law, and if a public nuisance, it should be an information in the name of the attorney general, and then it would be for his consideration whether he would file such information or not. Chancellor Kent throws out a doubt whether it was not meant, that the attorney general might file an information in the king's bench. Such has not been held to be the meaning by English lawyers or courts, and it appears to me their construction is the right one.

The very fact, however, that there may be a doubt on the subject by intelligent jurists, should be sufficient to induce caution on the part of this court. In cases of public nuisance, there is an undisputed jurisdiction in the common law courts by indictment; and a court of equity ought not to interfere in a case of misdemeanor, when the object sought can be as well attained in the ordinary tribunals.

Admitting the jurisdiction, is there any thing in this case to warrant the interference of the court by way of injunction? In the view I take of the subject, I do not think it necessary to inquire whether there has been a violation of faith on the part of the defendants, or whether they have exceeded their powers, or exercised those granted to them in a wanton and oppressive manner. For from the case made by the bill and affidavits, I

punish the offenders. But an injunction also lies in equity to redress the grievance by way of injunction." 2 *Story's Eq.* 201, 203. See also *Eden on Injunctions*, 157, 158, chap. xi; *Dewey on Injunctions*, 237; *Blakemore* v. *Glamorganshire Canal Co.* 1 *Mylne and K.* 154; 6 *Cond. Eng. Chan. R.* 558; *Attorney General* v. *Burridge*, 10 *Price*, 350; *Attorney General* v. *Parmenter*, 10 *Price*, 378. But see *Beveridge* v. *Lacey*, 3 *Randolph*, 63; *Charles River Bridge* v. *Warren Bridge*, 6 *Pick.* 376.

[Attorney General v. New-Jersey Railroad and Transportation Co.]

cannot avoid the conclusion, that the nuisance complained of in the information, and what it appears to be the object of the relators either to prevent or abate, is already there.   The thing is done ; and the application to this court, if not too late, would be unavailing even if granted.   The nuisance complained of is the narrowness and position generally of the draw, or of the bent in which the draw is placed.   The piles were driven long before the information was filed ; and when the argument was heard before the court, the whole bridge was erected and finished, excepting probably a day's work to the slide, and the whole is now in use.   The difficulty, as is stated in some of the affidavits, does not consist in the slide.   No injury can result from that, provided it it removed at proper times, for the convenience of navigation. It is in the size of the opening between the piles, and that is not affected either one way or the other by the slide.   Suppose, if any part of the slide still remain unfinished, an injunction were to issue, restraining the company from finishing it, or from using it as it is, in what way would the relators be benefited ?   Would their difficulties, as regards the navigation of the river, be obviated in the least ?   Would they have less reason to complain than they have now ?   I do not perceive how such result could follow.

The injunction is a *preventive remedy.*   It interposes between the complainant and the injury he fears or seeks to avoid.   If the injury be already done, the writ can have no operation, for it cannot be applied correctively so as to remove it.

If the writ were to issue in this case, according to the prayer of the information, and the company were to be injoined from doing any more work on the draw or bent, and commanded to stop until the further order of the court, it might, and doubtless would operate as a punishment to them.   It would prevent them from using their property and deriving any benefit from it, but it would afford no aid to the relators.   Even if it were made perpetual, it would give them no relief.   If it be said, that the company will by this means be induced to do what is believed by the complainants to be right, and widen their draw so as to do justice to the navigating interest ; the answer is, that such is not

the legitimate object of the writ.   It is not used for the purpose of punishment, or to compel persons to do right, but simply to prevent them from doing wrong.

This difficulty appears to have presented itself very early, and to have continued down to the time of presenting the information.   The piles were driven, and the location and size and position of the draw fixed on in the month of June.   In July, at a meeting where some of the relators were present, it was resolved that the bridge then erecting was a *public nuisance,* and ought to be *abated.*   In the information, it is called an *apparent public nuisance ;* and a part of the prayer is, that the nuisance be abated.   One of the witnesses swears, that it is *now* a public nuisance.   Of what possible benefit, then, can the injunction be, except to punish the party for an alleged abuse of power.

The relators insist, that they have made their application as soon as practicable; that they confided in the agreement of the company as to the width of the draw, and were deceived.   Admitting this to be all true, it is not perceived that the case is varied.   If the nuisance be erected before the party has time to prevent it, the only remedy is to have it abated.; and whether it be accomplished by the deception of the party or by other means, the province of the court remains the same.

If the relators shall seek to abate the alleged nuisance, the proper course, as it appears to the court, is by indictment at common law.   The fact, whether it be a nuisance or not, is proper to be tried by jury, whether the proceeding be in this court or elsewhere; and it would seem as though the common law courts were the more appropriate tribunals for all matters of this character.

The application for an injunction is denied, with costs.